**Chandra LAUWIRA, Petitioner,**

v.

**Alberto R. GONZALES, Respondent.**[1]

No. 05–4418.

United States Court of Appeals, Second Circuit.

Aug. 17, 2006.

---

1. We direct the clerk to change the official caption to comport with this decision.

**4**

Oleh R. Tustaniwsky, Law Offices of Andrew P. Johnson, New York, NY, for Petitioner.

Jimmy L. Croom, Assistant United States Attorney (for David Kustoff, United States Attorney for the Western District of Tennessee), Jackson, TN, for Respondent.

Present CHESTER J. STRAUB, ROSEMARY S. POOLER and ROBERT D. SACK, Circuit Judges.

### SUMMARY ORDER

Chandra Lauwira, through counsel, petitions for review of an order by Board of Immigration Appeals ("BIA") Member Fred Hess affirming Immigration Judge ("IJ") Annette S. Elstein's denial of withholding of removal and relief under the Convention Against Torture ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85; 8 C.F.R. § 1208.16. *In re Chandra Lauwira*, No. A 96–265–987 (BIA July 21, 2005), *aff'g* No. A 96–265–987 (Immig. Ct. N.Y. City May 14, 2004).

We assume the parties' familiarity with the underlying facts and procedural history of the case.

Where, as here, the BIA rejects part of the IJ's decision but affirms based on the remainder, we review the IJ's decision as modified by the BIA. *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir.2005). We apply the deferential "substantial evidence" standard to review the agency's findings of fact, accord *Chevron* deference to any authoritative interpretations of law, and review *de novo* the agency's application of law to facts. *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 148–49 (2d Cir.2003); *see generally Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Lauwira claimed that he was likely to be persecuted and tortured in his home country, Indonesia, as an ethnic-Chinese Christian. He testified that, throughout his youth in Jakarta, he was targeted by groups of Muslim Indonesians because of his "very Chinese face," and these groups would try to rob him and/or take his car, and would hit him if he resisted. Lauwira testified that the trouble worsened in 1998. Riots that began in May 1998 in response to government brutality against pro-democracy demonstrators became an occasion for anti-Chinese violence. Rioters attacked Lauwira's family store (the family lived upstairs from their store), and chased him and his family throwing rocks and wielding swords. Lauwira and his family escaped with bruises and scratches. Afterwards, Lauwira and his neighbors stayed up nights guarding their homes and families. Lauwira also stated that he feared religious persecution, and pointed to numerous bombings of churches and other incidents of religious terrorism in Jakarta, starting just before he left the country and continuing thereafter. He submitted a *New York Times* article con-

firming his description of the 1998 riot. He also submitted Congressional testimony by human rights volunteer Sandyawan Sumardi describing the arson, looting, and rapes perpetrated against the Chinese community during the riots. Indeed, the general country conditions to which Lauwira testified—and in particular the targeting of Christians, ethnic-Chinese, and especially ethnic-Chinese Christians by violent, uncontrollable factions—do not appear to be in dispute. *See, e.g., Sael v. Ashcroft,* 386 F.3d 922, 925–27 (9th Cir. 2004) (finding applicant eligible for asylum, and describing the plight of ethnic-Chinese Christians in Indonesia).

Because Lauwira failed to file within one year of arriving, the IJ found him barred from applying for asylum and considered him only for withholding and CAT relief. The IJ found Lauwira not credible because she found his testimony vague and speculative and because he had failed to submit any corroboration from family members. On appeal, the BIA agreed with Lauwira that the IJ's credibility finding was not "supported by the record." Nonetheless, the BIA affirmed the IJ's denial of withholding and CAT relief because the BIA "concur[red] with the [IJ] that the harm to the respondent constitutes discrimination and harassment, but not persecution," and agreed that Lauwira "failed to show he was more likely than not to be tortured by, or with the acquiescence of, the government."

We find that the BIA erred in a number of respects and accordingly vacate. To begin with, the BIA misread the IJ's opinion as pronouncing on whether the events Lauwira described amounted to persecution when, in fact, the IJ simply disregarded Lauwira's testimony as incredible. The BIA also failed to consider whether, even if Lauwira failed to show past persecution or torture, the events he described supported his claim that he was more likely than not to suffer future persecution or torture. Finally, neither the IJ nor the BIA considered whether the general targeting of ethnic-Chinese Christians—for arson, bombings, looting, theft, and rape—established a "pattern or practice" of persecution that might entitle Lauwira to relief regardless of whether or not he showed individualized risk. 8 C.F.R. § 208.16(b)(2)(i), (ii); *see also Sael,* 386 F.3d at 925 (9th Cir.2004) (explaining that the more evidence an applicant presents that his group is systematically persecuted, the less evidence of individualized risk he need present).

For these reasons, we GRANT the petition, VACATE the BIA's decision, and REMAND to the BIA for further proceedings consistent with this decision. We deny, as moot, Lauwira's pending stay of removal.